BRIAN J. STRETCH (CABN 163973)
United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

JEFFREY D. NEDROW (CABN 161299)
JOHN C. BOSTIC (CABN 264367)
Assistant United States Attorneys

   150 Almaden Boulevard, Suite 900
   San Jose, California 95113
   Telephone: (408) 535-5061
   FAX: (408) 535-5066
   jeff.nedrow@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>   v.<br><br>SRIDEVI AIYASWAMY,<br><br>    Defendants | No. 15-CR-00568 LHK<br><br>UNITED STATES' SENTENCING MEMORANDUM<br><br>Sentencing:  December 20, 2017<br>Time:        9:15 a.m.<br>Judge:      Hon. Lucy H. Koh |

## I. INTRODUCTION & FACTUAL BACKGROUND

The government hereby submits its sentencing memorandum in advance of the sentencing of Defendant Sridevi Aiyaswamy. This case began on December 3, 2015, when a grand jury returned an Indictment against Defendant charging her with thirty-four counts of Visa Fraud in violation of 18 U.S.C. § 1546(a). [Dkt. No. 1]. On July 19, 2017, Defendant appeared before the Court and entered a guilty plea as to Counts One, Two, and Four, pursuant to a Plea Agreement with the government under Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure. [Dkt. Nos. 64, 65]. Sentencing is

currently set for December 20, 2017.  For the reasons discussed below, the government recommends that the Court impose a sentence of 18 months' imprisonment, a $10,000 fine, three years of supervised release, and a $300 special assessment.

Defendant is the owner and operator of Strataserv, Inc.—a San Jose-based company.  Strataserv provides consulting services to technology businesses, including information technology staffing services.  As part of those IT staffing services, Strataserv previously was in the business of providing skilled foreign workers for local companies operating in the technology sector.  In order to obtain visas for those foreign workers, Aiyaswamy submitted documentation to United States government agencies under the Foreign Labor Certification H-1B visa process.  The H-1B visa is a non-immigrant visa that allows foreign workers to be employed by U.S. employers on a temporary basis—for periods of time up to three years.  H-1B visas are available only to workers who have (1) qualifications that make them suitable for skilled and specialized positions and (2) a promise of employment in such a position from an American employer.  The H-1B visa application process involves the U.S. Department of Labor, the U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services ("USCIS"), and the U.S. Department of State, the last of which ultimately issues visas to eligible beneficiaries at the conclusion of the process.

In order to verify that an H-1B beneficiary has received a qualifying offer of employment from a U.S. company, USCIS requires the H-1B application to include a Labor Condition Application ("LCA") from the sponsoring employer, laying out some of the details of the job waiting for the foreign beneficiary.  Employers often provide additional verification in the form of job offer letters and "statements of work."  First, the LCA is submitted to the Department of Labor for approval. Subsequently, the LCA and other supporting documents are attached to an I-129 application form and submitted to USCIS for review.

In this case, Defendant submitted numerous I-129 forms between approximately 2010 and 2013, seeking H-1B visas to allow Strataserv to place skilled workers at technology companies in the Bay Area. In over twenty-five of these applications, however, Defendant falsified information to indicate that there were jobs waiting for the respective beneficiaries, when in fact those jobs did not exist and had

not been offered to those foreign workers. Defendant's I-129 forms attached LCAs certifying that the beneficiaries would be working at a San Jose address associated with Cisco Systems—a large information technology and networking company with thousands of employees. Defendant also included in the fraudulent applications "statement of work" documents purporting to specify the salaries, job titles, job descriptions, dates of employment, and project manager names for the supposed positions. Defendant signed these I-129 forms and certified "under penalty of perjury under the laws of the United States of America, that [each] petition and the evidence submitted with it is all true and correct."

Each fraudulent statement of work contained a signature from a project manager at Cisco—either Syam Appala or Shyyun Sheran Lin. These individuals are managers at Cisco, and Defendant had had previous dealings with both of them in connection with staffing positions at the company. However, when interviewed by federal agents, both Appala and Lin confirmed that their signatures had been forged on dozens of Defendant's statements of work. Cisco further confirmed that these statements of work did not correspond to any jobs that actually existed at the company; indeed, no jobs had been offered to the beneficiaries in question. Despite the misstatements in Defendant's applications, several of the applied-for H-1Bs were granted before her fraud was discovered.

Defendant's practice of submitting fraudulent H-1B applications for beneficiaries who had not yet received job offers gave her a competitive advantage against other staffing companies. The H-1B process is competitive and time-sensitive, with the U.S. government offering a capped number of such visas each year. The process can also be lengthy, involving a significant delay between application and issuance of the visa. By lying about the jobs waiting for beneficiaries, Defendant was able to apply for H-1B visas for her candidates immediately instead of waiting to obtain employment for them before starting that process. When real positions eventually became available for those foreign workers, Defendant could present the candidates to potential employers as ready for immediate employment because they already had visas in effect. According to Defendant herself, she made over $60,000 as a result of these fraudulent submissions.

/ /

## II. THE SENTENCING GUIDELINES CALCULATION

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court ruled that the federal Sentencing Guidelines are "effectively advisory," and that "[t]he district court, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *Id*. at 245-46. *See also* 18 U.S.C. § 3553(a)(4). The Sentencing Guidelines play an important role in sentencing, and should serve as "the starting point and the initial benchmark." *Kimbrough v. United States*, 552 U.S. 85, 108 (2007) (quotation omitted). Here, consistent with the Plea Agreement and the calculations in the Presentence Report, the offense level should be calculated as follows:

| | | |
|---|---|---:|
| a. | Base Offense Level:<br>(U.S.S.G. § 2L2.1(a) – False statement in respect<br>to immigration status of another) | 11 |
| b. | Specific offense characteristics:<br>(U.S.S.G. § 2L2.1(b)(2)(B) – Offense involved<br>more than 25 documents) | +6 |
| c. | Acceptance of Responsibility:<br>(U.S.S.G. § 3E1.1 – Defendant is entitled to a<br>two-level reduction for acceptance of responsibility) | -2 |
| e. | Adjusted Offense Level: | 15 |

There is no dispute as to the base offense level or the specific offense characteristics that apply in this case. The government has provided discovery to the defense and to U.S. Probation confirming the fact that Defendant filed fraudulent applications for more than twenty-five individuals, requiring a six-level enhancement under Section 2L2.1(b)(2)(B) of the Sentencing Guidelines. *See* PSR ¶¶ 14, 17, & 34.

Because Defendant has pleaded guilty in advance of trial, the government agrees that she is entitled to a two-point reduction for acceptance of responsibility. Defendant, however, is not eligible for the third point for acceptance. On its face, section 3E1.1(b) permits the third point only "upon motion of the government," and the government is making no such motion in this case. U.S.S.G. § 3E1.1(b). In addition, the third point is appropriate only in cases where "the defendant has assisted authorities in the investigation or prosecution of [her] own misconduct by timely notifying authorities of [her] intention to enter a plea of guilty, thereby permitting the government and the court to allocate their resources

efficiently." *Id.* The Sentencing Commission's notes for this section indicate that "conduct qualifying for a decrease in offense level under subsection (b) will occur *particularly early in the case....* at a sufficiently early point in the process so that the government may avoid preparing for trial." U.S.S.G. § 3E1.1, Application Note 6. Here, Defendant did not plead guilty until more than eighteen months after indictment and just days before trial, foreclosing application of the third point.

### III. THE GOVERNMENT'S SENTENCING RECOMMENDATION

The government believes that a low-end guidelines sentence is appropriate given the facts of this case and the established sentencing factors. The relevant considerations include the nature and circumstances of the offense, the defendant's history and characteristics, the need for the sentence to promote respect for the law and provide just punishment for the offense, to afford adequate deterrence, to protect the public from further criminal conduct by Defendant, and to avoid unwarranted sentencing disparities among defendants with similar records who are guilty of similar conduct. *See* 18 U.S.C. § 3553(a).

The government has reviewed the PSR prepared by U.S. Probation and has no objections to the facts contained therein. Those facts support the application of the sentencing guidelines in this case and establish that a variance downward from the guidelines range is not warranted. Although Defendant has no criminal history, and has pleaded guilty to only three counts of visa fraud, Defendant actually committed that offense dozens of times. Sentencing Guidelines sections 1B1.3(a)(1)-(2) require courts to include all "relevant conduct" relating to the offense. In determining relevant conduct for sentencing purposes, a district court may include conduct related to uncharged or dismissed offenses. *United States v. Munoz,* 233 F.3d 1117, 1126-27 (9th Cir. 2000), *superseded by statute on other grounds* ("The district court is entitled to take into account all relevant conduct, charged and uncharged, provided that the relevant conduct findings are supported by sufficient evidence."). In this case, an examination of all relevant conduct shows that Defendant's fraud was not an exception or a one-time mistake, but instead a semi-regular part of her business practice for several years. On these facts, the government believes that a variance is not warranted.

//

In sum, a low-end guidelines sentence of eighteen months, plus a $10,000 fine, would be sufficient, but not greater than necessary, to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

## IV. CONCLUSION

For the foregoing reasons, the government respectfully recommends that the Court sentence Defendants to 18 months' imprisonment, a $10,000 fine, three years of supervised release, and a special assessment of $300, as recommended by United States Probation.

DATED: December 13, 2017

Respectfully Submitted,

BRIAN J. STRETCH
United States Attorney

/s/
JEFFREY D. NEDROW
JOHN C. BOSTIC
Assistant United States Attorneys